THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| Rebecca Brandi-Vanmeter,<br><br>                 Plaintiff,<br><br>v.<br><br>MP2 Enterprises, LLC; Bryant Peterson;<br>Layne Peterson; Doe Corporation 1-10; John<br>Doe 1-10,<br><br>                 Defendant. | **MEMORANDUM DECISION AND ORDER FOR PRECERTIFICATION DISCOVERY OF THE ARBITRATION AGREEMENTS**<br><br>Case No. 4:23-cv-00081-DN-PK<br><br>District Judge David Nuffer |

Plaintiff Rebecca Brandi-Vanmeter filed a Motion[1] that requests the certification of four Rule 23 subclasses of pizza delivery drivers that were allegedly being paid below minimum wage.[2] Defendants filed a Response[3] arguing that certification should be denied because of MP2 Enterprises' practice of having employees sign binding arbitration agreements. Plaintiff filed a Reply[4] in support of its Motion and in opposition to Defendants' Response. Based on the parties' filings and the evidence in the record, precertification discovery of MP2 Enterprises' arbitration agreements is ordered.

---

[1] Motion to Certify Class ("Plaintiff's Motion"), docket no. 30, filed January 5, 2024.

[2] The delivery drivers would be divided into four subclasses to represent the four states where the delivery drivers worked: Alaska, Arizona, Utah, and Nevada. Plaintiff's Motion at 1.

[3] Response to Motion to Certify Class ("Defendants' Response"), docket no. 35, filed February 2, 2024.

[4] Reply to Response to Motion ("Plaintiff's Reply"), docket no. 38, filed March 4, 2024.

## BACKGROUND

Defendants operate Pizza Hut locations in Alaska, Arizona, Utah, and Nevada.[5] Plaintiff

alleges that she and other similarly situated delivery drivers were paid under federal and state

minimum wage rates because they were reimbursed below the IRS standard reimbursement rate

for their delivery driver expenditures, such as gasoline, insurance, and automobile maintenance.[6]

On May 14, 2024, conditional certification of an FLSA Collective Action was granted and

Defendants were ordered to provide Plaintiff with the contact information of potential opt-in

plaintiffs.[7]

Plaintiff's instant motion requests certification of four Rule 23 subclasses of current and

former delivery drivers that worked in Alaska, Arizona, Utah, and Nevada.[8] In response,

Defendants argue Plaintiff's Motion for Certification should be denied because all of its

employees (except the named Plaintiff) signed arbitration agreements that require them to: (1)

arbitrate claims they may have against MP2 Enterprises; and (2) assert claims individually and

not through class actions.[9] In support of this argument Defendants filed: (1) a sworn affidavit by

the manager of MP2 Enterprises, Bryant Peterson; and (2) an unsigned arbitration agreement,

which is dated for October 2023. Mr. Peterson attests that the company's policy for the last five

years is for each new hire to sign an arbitration agreement that requires their employees to pursue

claims individually through arbitration and not class actions.[10] In her Reply, Plaintiff argues: (1)

---

[5] Complaint ¶2 at 2, docket no. 1, filed September 27, 2023.

[6] Complaint, ¶70, at 10.

[7] Order Granting Conditional Certification of FLSA Collective Action, docket no. 39, filed May 15, 2024.

[8] Plaintiff's Motion at 1.

[9] Defendants' Response at 2.

[10] Declaration of Bryant Peterson, Exhibit A, ¶8 at 2, docket no. 35, filed February 2, 2024.

Defendants waived their right to raise arbitration agreements in this litigation;[11] (2) Defendants have not established any standard business practice relating to arbitration agreements;[12] and (3) the class should be certified on this motion and then decertified if discovery reveals the arbitration agreements.[13]

**DISCUSSION**

1. **Defendants may assert the arbitration agreements as a defense to Plaintiff's Motion for Certification**

Defendants argue that Plaintiff's class action should not be certified because all of their delivery drivers signed arbitration agreements, with the exception of the named Plaintiff.[14] In response, Plaintiff argues Defendants waived their right to raise the arbitration agreement as a defense because they did not assert the arbitration agreement in their Amended Answer.[15] Defendants' Amended Answer does not specifically assert the arbitration agreement as a defense, but the Amended Answer does state: "Mention the arbitration agreement."[16] It is apparent from this statement that Defendants intended to assert the arbitration agreements as a defense in their Amended Answer, but forgot to provide a more detailed defense by mistake.

"The purpose of . . . pleading [an affirmative defense] is to give the opposing party notice of the [defense] and a chance to argue, if he can, why the imposition of [the defense] would be inappropriate."[17] "The best procedure is to plead an affirmative defense in an answer or amended

---

[11] Defendants' Response at 1-2.

[12] Defendants' Response at 2-4.

[13] Defendants' Response at 7-9.

[14] Defendants' Response at 2.

[15] Plaintiffs' Reply at 2 ("Here, Defendants did not raise arbitration in their Answer or Amended Answer, either as an affirmative defense or otherwise.").

[16] Amended Answer at 17, docket no. 28, filed December 29, 2023.

[17] *Ahmad v. Furlong*, 435 F.3d 1196, 1201 (10th Cir. 2006) (alterations in original).

answer."[18] However, even if "a party has not formally moved to amend its answer . . . a district court may allow the party to 'constructively' amend [its] answer, such as by raising an affirmative defense in a motion for summary judgment."[19] "Courts should consider several factors in determining whether to allow a party's constructive amendment."[20] The trial court's "primary consideration is whether the opposing party will suffer prejudice."[21] Additionally, "denial of a proposed amendment is appropriate if the amendment is an attempt to make a pleading a moving target or to salvage a lost case by untimely suggestion of new theories."[22] Courts may also deny a constructive amendment "on grounds such as undue delay, bad faith or dilatory motive."[23]

Defendants may assert the arbitration agreements as a defense to Plaintiff's Motion for Certification. Defendants did not waive their right to assert the arbitration agreements as a defense, and none of the other grounds for denial (i.e., prejudice, undue delay, bad faith, dilatory motive, or salvage a lost case) are present.

2. **Plaintiff established a genuine dispute as to a material fact with regards to the arbitration agreements**

Defendants argue that their routine practice of having all of their employees sign arbitration agreements for the last five years shifted the burden to Plaintiff to prove a genuine dispute of material fact to prevent the application of the arbitration agreements.[24] In *Hancock v. AT&T*, the Tenth Circuit analyzed whether the defendant's filed declarations regarding the

---

[18] *Sky Harbor Air Serv., Inc. v. Reams*, 491 F. App'x 875, 884 (10th Cir. 2012).

[19] *Sky Harbor Air Serv., Inc.*, 491 F. App'x at 884.

[20] *Sky Harbor Air Serv., Inc.*, 491 F. App'x at 884.

[21] *Sky Harbor Air Serv., Inc.*, 491 F. App'x at 884.

[22] *Sky Harbor Air Serv., Inc.*, 491 F. App'x at 884.

[23] *Sky Harbor Air Serv., Inc.*, 491 F. App'x at 884.

[24] *See* Defendants' Response at 4; *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1264 (10th Cir. 2012).

corporation's standard practice of having their customers sign arbitration agreements was sufficient compel arbitration.[25] "Under Rule 406, [e]vidence of . . . an organization's routine practice may be admitted to prove that on a particular occasion the . . . organization acted in accordance with the . . . routine practice."[26] If the parties disagree on the applicability of an arbitration agreement, a court may compel arbitration "if there are no genuine issues of material fact regarding the parties' agreement."[27] However, if the parties disagree on the applicability of the arbitration agreement, the party opposing arbitration "receives the benefit of all reasonable doubts and inferences that may arise."[28]

Plaintiff established a dispute of a material fact when she argued that: (1) Defendants failed to produce any signed arbitration agreements by its delivery drivers; (2) the arbitration agreement Defendants produced was dated October 2023, which is after the Complaint was filed on September 27, 2023; and (3) the arbitration agreement may have been amended and the scope broadened between September 27, 2020, and September 27, 2023. These disputed facts prevent denial of certification and require pre-certification discovery of the arbitration agreements.

### 3. Pre-certification discovery is necessary to evaluate the requirements for certification under Rule 23

Generally, "pre-certification discovery should . . . pertain to the requirements of Rule 23."[29] In deciding the scope of pre-certification discovery, courts consider "the burden imposed

---

[25] *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1253, 1264, 1266-67 (10th Cir. 2012).

[26] *Hancock v. AT&T Co.*, 701 F.3d 1248, 1264 (10th Cir. 2012) (analyzing defendant's routine business practice of having their customer sign terms of service).

[27] *SS White Burs, Inc. v. Guidance Endodontics, LLC*, 789 F. App'x 714, 718 (10th Cir. 2019) (citing *Hancock*, 701 F.3d at 1261).

[28] *SS White Burs, Inc.* 789 F. App'x at 718 (citing *Hancock*, 701 F.3d at 1261).

[29] *Infinity Home Collection v. Coleman*, 2018 WL 1733262, at *2 (D. Colo. Apr. 10, 2018).

on the responding party[.]"[30] Courts have allowed pre-certification discovery to "define[] the

proposed class or determine[] whether the named plaintiffs are similarly situated to members of

[a] proposed class."[31]

Pre-certification discovery of the arbitration agreements is necessary to analyze the

requirements of Rule 23 for the four subclasses that Plaintiff requested to certify. Defendants

claim to possess enforceable arbitration agreements for all of its delivery drivers. If this is true,

then Plaintiff may be unable to satisfy the numerosity requirement for any of its four proposed

subclasses. Pre-certification discovery is necessary to determine the scope of the arbitration

agreements that were signed by Defendants' delivery drivers.

### 4. Defendants shall produce the arbitration agreements for the delivery drivers that consented to join the lawsuit

Plaintiff argues: (1) Defendants bald assertion that every delivery driver signed an

arbitration agreement is not sufficient to avoid certification of the four subclasses;[32] (2)

Defendants only provided one unsigned arbitration agreement from October 2023, and this is

insufficient to establish all delivery drivers signed arbitration agreements;[33] and (3) we cannot

conclude the arbitration agreements are valid because the arbitration agreements are not in

evidence.[34] Plaintiff's three arguments all rely on the fact that Defendants did not produce any of

the arbitration agreements for the 147 delivery drivers that consented to join this lawsuit in the

---

[30] *Gomez v. Epic Landscape Prods., L.C.*, No. 22-2198-JAR-ADM, 2024 WL 1885507, at *3 (D. Kan. Apr. 30, 2024)

[31] *Peterson v. Nelnet Diversified Sols., LLC*, No. 17-CV-01064-NYW, 2018 WL 9662030, at *5 (D. Colo. Feb. 2, 2018).

[32] Plaintiff's Reply at 2-3.

[33] Plaintiff's Reply at 5.

[34] Plaintiff's Reply at 9.

11 Notices of Consent that Plaintiff filed.[35] Pre-certification discovery of these arbitration

agreements will allow determination that Plaintiff has (or has not) met the Rule 23 requirements

for each subclass. Additionally, the costs Defendants will incur from producing the 147

arbitration agreements are proportional to the needs of the case because these disclosures could

prevent certification and may lead to the dismissal of the lawsuit.

## CONCLUSION

Defendants shall file four charts that contain information on each of the 147 delivery

drivers that consented to join this lawsuit. Specifically, Defendants shall file one chart for each

of the four states that lists the delivery drivers that worked in each of the four states (i.e., Utah,

Nevada, Arizona, and Alaska). Each chart shall list the drivers in the order of the date when they

signed the arbitration agreement with Defendants.

Each chart shall contain the following headings in the columns and provide the following

information on each delivery driver:

1. the name of each delivery driver that joined the lawsuit;

2. the state in which each delivery driver worked;

3. the date each delivery driver signed the arbitration agreement;

4. the timeframe in which Defendants used the specific variation of the arbitration

   agreement form that was signed by each delivery driver; and

---

[35] Notice of Consents, docket no. 40, filed June 20, 2024 (listing 62 potential class members); Notice of Consents, docket no. 41, filed June 26, 2024 (listing 18 potential class members); Notice of Consents, docket no. 42 filed July 3, 2024 (listing 21 potential class members); Notice of Consents docket no. 43 filed July 9, 2024 (listing 15 potential class members); Notice of Consents, docket no. 44 filed July 10, 2024 (listing 5 potential class members); Notice of Consents docket no. 45, filed July 18, 2024 (listing 11 potential class members); Notice of Consents docket no. 46 filed July 31, 2024 (listing 3 potential class members); Notice of Consents docket no. 47 filed August 14, 2024 (listing 5 potential class members); Notice of Consents docket no. 48 filed August 20, 2024 (listing 3 potential class members); Notice of Consents docket no. 49, filed August 28, 2024 (listing 1 potential class member); Notice of Consents docket no. 50 filed September 11, 2024 (listing 3 potential class members).

5.  a citation to the filed exhibit of the arbitration agreement that the delivery driver

signed.

Defendants shall also file the each of the 147 arbitration agreements compiled as four separate

exhibits, one for each state. Defendants file these documents by February 13, 2025.

Signed January 16, 2025.

BY THE COURT

David Nuffer
United States District Judge