THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| REBECCA BRANDI-VANMETER,<br><br>Plaintiff,<br><br>v.<br><br>MP2 ENTERPRISES, LLC; BRYANT PETERSON; LAYNE PETERSON; DOE CORPORATION 1-10; JOHN DOE 1-10,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO SET BRIEFING SCHEDULE ON THE IMPACT OF DEFENDANTS' PRE-CERTIFICATION DISCOVERY**<br><br>Case No. 4:23-cv-00081-DN-PK<br><br>District Judge David Nuffer |

Plaintiff Rebecca Brandi-Vanmeter filed a Motion[1] to Set Briefing Schedule on the Impact of Defendants' Pre-Certification Discovery Production on Plaintiff's Motion for Class Certification ("Motion"). The Motion seeks an opportunity to address the impact of the arbitration agreements and charts produced by Defendants ("Arbitration Exhibits"[2]). Defendants filed a Response[3] arguing that further briefing is unnecessary. Plaintiff filed a Reply[4] in support of its Motion and in opposition to Defendants' Response. Based on the parties' filings and the evidence in the record, Plaintiff's Motion[5] is GRANTED in part and DENIED in part and further briefing is ordered on the impact of Defendants' production of pre-certification discovery.

---

[1] Docket no. 55, filed February 24, 2025.

[2] Arbitration Agreement Charts for Nevada, Utah, and Arizona Employees, docket no. 54, filed February 13, 2025 (collectively referred to as "Arbitration Exhibits").

[3] Docket no. 59, filed March 3, 2025 ("Defendants' Response").

[4] Docket no. 60, filed March 5, 2025 ("Plaintiff's Reply").

[5] Motion, docket no. 55.

**BACKGROUND**

This request for extended briefing stems from Plaintiff's motion requesting certification of four Rule 23 subclasses consisting of current and former delivery drivers that worked in Alaska, Arizona, Utah, and Nevada.[6] In response to the request for certification, Defendants argued Plaintiff's request for certification should be denied because all of its employees (except the named Plaintiff) signed arbitration agreements that require them to (1) arbitrate their claims and (2) bring their claims individually, as opposed to a class action.[7] Following briefing by the parties, a Memorandum Decision and Order for Precertification Discovery of the Arbitration Agreements ("January Order")[8] ordered Defendants' to produce pre-certification discovery of the arbitration agreements for the 147 delivery drivers that had consented to join the lawsuit.

In response to the January Order, Defendants produced the Arbitration Exhibits for approximately 141 employees working in Utah, Nevada, and Arizona.[9] No arbitration agreements were submitted for employees in the state of Alaska.[10] In response to this production of pre-certification discovery, Plaintiff now moves for further briefing on the impact of the Arbitration Exhibits produced during pre-certification discovery.[11] In support of the Motion, Plaintiff argues: (1) Defendants have not established evidence supporting Defendants assertion that the arbitration agreements between Pizza Hut, Inc. ("Pizza Hut") and employees extend to Defendants as an "affiliate" of Pizza Hut;[12] and (2) some of the Arbitration Exhibits were signed

---

[6] *Id.* at 1.

[7] Defendants' Response to Plaintiff's Motion for Rule 23 Class Certification, docket no. 35, filed February 2, 2025.

[8] Memorandum Decision and Order for Precertification Discovery of the Arbitration Agreements, docket no. 51, entered January 16, 2025.

[9] *See generally* Arbitration Exhibits.

[10] *See id.*

[11] *See generally* Motion.

[12] *Id.* at 2–3; *see generally* Arbitration Exhibits.

2

by employees after consenting to the class, which requires further briefing on Defendants' communications with the class.[13]

Defendants' Response argues that further briefing is unnecessary because the issues are now fully briefed.[14] Plaintiff's Reply argues that further briefing is essential for two reasons: first, there is no information or evidence that Defendants are an "affiliate" of Pizza Hut to bring Defendants within the arbitration agreements.[15] Second, further briefing would also be necessary related to the Arbitration Exhibits and whether an "employer—knowing that they have an active claim against them—can ask employees—to sign an arbitration agreement."[16]

## DISCUSSION

### 1. Further briefing on the impact of the Arbitration Exhibits is necessary to evaluate whether Defendants are an affiliate of Pizza Hut

Plaintiff argues that further briefing is necessary to determine whether Defendants are "affiliates" of Pizza Hut.[17] In Response, Defendants assert that a franchise agreement with Pizza Hut establishing their status as an "affiliate" and no other information is necessary.[18] The franchise agreement is not attached to Defendants' Response.[19] Plaintiff's Reply argues that Defendants' unsupported affiliation statements require further briefing.[20] Plaintiff is correct. No franchise agreement or other supporting documentation of Defendants' affiliate status has been presented. Whether Defendants are affiliates of Pizza Hut is not clear.

---

[13] Motion at 3.

[14] Defendants' Response at 1.

[15] Plaintiffs' Reply at 1.

[16] *Id.*

[17] *Id.*

[18] Defendants' Response at 2.

[19] *See generally id.*

[20] Plaintiffs' Reply at 1.

The arbitration agreements are "governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq."[21] In *Morgan v. Sundance*,[22] the Supreme Court explains: "Section 2—the FAA's substantive mandate—makes written arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract.'" This provision requires "courts 'to place such agreements upon the same footing as other contracts.'"

As Plaintiff points out,[23] the pre-certification production of the arbitration agreements established that the arbitration agreements language changed after litigation began. Before September 27, 2023, when the Complaint was filed, employees signed a arbitration agreements reciting: "Because of the delay and expense of the court systems, *Pizza Hut, Inc.* on behalf of itself and its parents and affiliates, officers and directors (collectively, "Pizza Hut") . . . ."[24] The text changed in October 2023 when employees began signing a new version of the arbitration agreement which recites, "Because of the delay and expense of the court systems, *MP2 Enterprises, LLC and MP2 Alaska, LLC* on behalf of itself and its parents and affiliates, officers and directors (collectively, "MP2") . . . ."[25] This change in the agreement form requires explanation. Further, Defendants' Response[26] that a franchise agreement exists and establishes affiliate status necessitates further briefing.

---

[21] *See generally* Arbitration Exhibits (noting all exhibits include this language).

[22] *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629–30 (2009).

[23] Motion at 3.

[24] Arbitration Exhibits, Arizona Employee Exhibits 1–5, Nevada Employee Exhibits 1–72, Utah Employee Exhibits 1–44 (emphasis added).

[25] *Id.* at Arizona Employee Exhibits 6–8, Nevada Employee Exhibits 73–81, Utah Employee Exhibits 45–52 (emphasis added) (noting that there is one anomaly wherein a Utah employee, Ryan Putnam, signs an arbitration agreement in October 2023 with the "Pizza Hut" language.).

[26] Defendants' Response at 2.

Therefore, Plaintiff's Motion is GRANTED and further briefing by the parties is necessary.

### 2. Further briefing is necessary to evaluate Defendants' employment policies and class communications for abuse under Rule 23

As previously explained in the January Order, "Further pre-certification discovery [was] necessary to determine the scope of the arbitration agreements that were signed by Defendants' delivery drivers."[27] The January Order further advised that the process of "[p]re-certification discovery of these arbitration agreements will allow determination that Plaintiff has (or has not) met the Rule 23 requirements for each subclass."[28]

Plaintiff now argues that since filing this lawsuit Defendants have potentially engaged in abusive class communications, which warrants briefing on "whether an employer—knowing that they have an active claim against them—can ask employees—who do not know about the claim—to sign an arbitration agreement."[29] There are approximately twenty-one employees who signed arbitration agreements after the litigation began, which include the following language on the separate signature page: "I acknowledge and agree that this Agreement to Arbitrate is made in exchange for my employment *or continued employment*, as well as the mutual promises contained in this Agreement."[30] Defendants assert that only one individual, Mr. Yellowhorse,

---

[27] January Order at 4.

[28] *Id.*

[29] Motion at 3; *see also* Plaintiff's Reply at 1.

[30] Arbitration Exhibits, Arizona Employee Exhibits 6–8, Nevada Employee Exhibits 73–81, Utah Employee Exhibits 44–52 (emphasis added) (noting that the separate signature page on all of the produced arbitration agreements include this language).

signed an agreement after litigation began. However there seem to be others.[31] And, it appears that at least three persons no longer employed by Defendants signed an arbitration agreement.[32]

There are other oddities. For instance, all of the Defendants' employees who have not signed the newer (except Ryan Putnam) version of the arbitration agreement were terminated on September 2023.[33] There are two employees who began their employment with Defendants in February 2014 who signed over ten years later after litigation begand: Aaron Bolton, who signed on April 17, 2024, and Steven Vandermeide, who signed June 4, 2024. Therefore, the Plaintiff's Motion is GRANTED. Further briefing is necessary.

## CONCLUSION

Based on the parties briefing, and the pre-certification discovery produced by Defendants, and finding good cause therefor,

IT IS HEREBY ORDERED that the Motion[34] is GRANTED in part and DENIED in part, as it relates to the suggested briefing schedule, and the deadlines for further briefing are as follows:

1. Defendant will file an opening brief on or before April 25, 2025, and
2. Plaintiff will file a response brief on or before May 23, 2025.

Defendants' opening brief shall address and include, but is not limited to, the following: (i) the franchise agreement or other supporting documentation of Defendants' affiliate status with Pizza Hut; (ii) supporting evidence of Defendants policies and procedures during its hiring process;

---

[31] *See id.* (noting that Kaden Yellowhorse, Maira Castro, and Nataanii Acquila all started employment 10/2023 but executed arbitration agreements on January 16, 2024 (Mr. Yellowhorse), March 15, 2024 (Maira Castro), and May 10, 2024 (Nataanii Aquila)).

[32] *Id.* at Utah Employee Exhibits 44, 51, and 52.

[33] *Id.*

[34] [Docket no. 55](), filed February 24, 2025.

(iii) process and procedures for sending and collecting arbitration agreement signatures (including software/website used for sending and storing the executed arbitration agreements); and (v) any other relevant and responsive information pertaining to communications with potential class members.

Signed March 28, 2025.

BY THE COURT

_____
David Nuffer
United States District Judge